# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA

|  |  |  |
|---|---|---|
| DAVID ORR, HENRY CHAMBERLAIN, ANGELA MICKEL, and JENNIFER GRADY, individually and on behalf of all others similarly situated, | ) ) ) ) ) | Case No.: 1:17-cv-01622-MLB |
| Plaintiffs, | ) ) ) |  |
| v. | ) ) |  |
| INTERCONTINENTAL  HOTELS GROUP, PLC, INTER-CONTINENTAL HOTELS CORPORATION, and INTERCONTINENTAL HOTELS GROUP RESOURCES, INC., | ) ) ) ) ) ) |  |
| Defendants. | ) ) ) ) ) |  |

## PLAINTIFFS' MEMORANDUM OF LAW
## IN SUPPORT OF MOTION FOR PRELIMINARY
## <u>APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT</u>

# **TABLE OF CONTENTS**

I.   INTRODUCTION ...................................................................................1

II.   FACTUAL BACKGROUND..........................................................................2

III.   SUMMARY OF THE SETTLEMENT ...........................................................3

   A.   The Settlement Class ................................................................ 3

   B.   Settlement Benefits.......................................................................4

      1.   Reimbursement of Certain Expenses and Losses Due
         to Fraudulent or Unauthorized Charges ...................................4

      2.   Costs of Notice and Settlement Administration....................6

      3.   Attorneys' Fees, Costs, and Expenses,
         and Representative Plaintiff Service Awards.........................6

IV.   ARGUMENT....................................................................................7

   A.   Preliminary Approval of the Settlement Is Appropriate ...........................9

      1.   The Settlement Class Is Well Represented ...........................9

      2.   The Settlement Was Reached as a Result of Hard-Fought,
         Arm's Length Negotiations..................................................12

      3.   The Settlement Benefits Are Excellent, Taking
         into Consideration the Costs, Risks, and Delay
         of Trial and Potential Appeals..............................................12

      4.   The Proposed Method of Distributing Relief
         Supports Preliminary Approval of the Settlement ...............14

      5.   The Terms of the Proposed Award of Attorneys'
         Fees Supports Preliminary Approval of the Settlement.......15

6.   The Settlement Parties' Agreements ....................................................16

7.   The Settlement Treats Settlement Class Members Equitably
      Relative to One Another...................................................................16

B.   The Class Is Likely to Be Certified for Settlement Purposes...................16

1.   The Requirements of Fed. R. Civ. P. 23(a) Are Satisfied....................17

2.   The Requirements of Fed. R. Civ. P. 23(b)(3) Are Satisfied ..............18

C.   The Notice Program Satisfies All Applicable Requirements...................20

1.   Contents of the Notice Program ...........................................................21

2.   Scope of the Notice Program  ............................................................22

V.   CONCLUSION............................................................................................ 25

# TABLE OF AUTHORITIES

Cases

*Bennett v. Behring Corp.*,
  737 F.2d 982 (11th Cir. 1984) ..............................................................9

*Eisen v. Carlisle & Jacquelin*,
  417 U.S. 156 (1974)...........................................................................20

*George v. Academy Mortg. Corp. (UT)*,
  369 F. Supp 3d 1356 (N.D. Ga. 2019).....................................................7

*Grant v. Capital Mgmt. Servs., L.P.*,
  No. 10-CV-WQH BGS, 2014 WL 888665 (S.D. Cal. Mar. 5, 2014)..................14

*In re Austrian & German Bank Holocaust Litig.*,
  80 F. Supp. 2d 164 (S.D.N.Y. 2000) ....................................................13

*In re Delta/AirTran Baggage Fee Antitrust Litig.*,
  317 F.R.D. 675 (N.D. Ga. 2016)..........................................................19

*In re Mego Fin. Corp. Sec. Litig.*,
  213 F.3d 454 (9th Cir. 2000) .............................................................10

*Lunsford v. Woodforest Nat'l Bank*,
  No. 12-CV-103-CAP, 2014 WL 12740375 (N.D. Ga. May 19, 2014) .................7

*Peters v. Nat'l R.R. Passenger Corp.*,
  966 F.2d 1483 (D.C. Cir. 1992) ..........................................................20

*Phillips Co. v. Shutts*,
  472 U.S. 797 (1985)...........................................................................19

*Twigg v. Sears, Roebuck & Co.*,
  153 F.3d 1222 (11th Cir. 1998) ..........................................................20

*Wal-Mart Stores, Inc. v. Dukes*,
  131 S. Ct. 2541 (2011) ...........................................................................17

Federal Rules of Civil Procedure

Fed. R. Civ. P. 23(a)(1) .............................................................................17

Fed. R. Civ. P. 23(a)(2) .............................................................................17

Fed. R. Civ. P. 23(a)(3) .........................................................................17, 18

Fed. R. Civ. P. 23(a)(4) .............................................................................18

Fed. R. Civ. P. 23(b)(3) ..................................................................18, 19, 20

Fed. R. Civ. P. 23(e) ..........................................................................*passim*

Miscellaneous Authorities

Manual for Complex Litigation (Fourth) § 11.423 (2004) .....................................11

Manual for Complex Litigation (Fourth) § 13.12 (2004) .......................................10

## I.   <u>INTRODUCTION</u>

Plaintiffs David Orr, Henry Chamberlain, Angela Mickel, and Jennifer Grady ("Representative Plaintiffs")[1] respectfully submit this memorandum of law in support of their Motion for Preliminary Approval of Class Action Settlement Agreement.

After hard-fought litigation and months of negotiations, the Settling Parties reached the Settlement Agreement ("Settlement") attached hereto as Exhibit A. The Settlement provides that IHG shall pay up to $1,550,000 in the aggregate to reimburse Settlement Class Members (i) up to $250 per claimant for certain claimed and documented expenses (including lost time) the Data Security Incidents contributed to being incurred, and (ii) up to $3,500 per claimant for unreimbursed losses due to fraudulent activity or unauthorized charges more likely than not caused by the Data Security Incidents. For the reasons set forth herein, the Settlement readily satisfies the applicable preliminary approval standard of likely to be approved as fair, reasonable, and adequate.

Representative Plaintiffs respectfully move this Court for entry of an Order: (1) granting preliminary approval of the Settlement; (2) approving the Notice Program, as set forth in the Declaration of Jeanne C. Finegan attached as Exhibit A

---

[1] The definitions in the Settlement are incorporated herein by reference.

to the Settlement, and directing commencement of notice to the Settlement Class as set forth in the Settlement and the Notice Program; (3) appointing Heffler Claims Group as Settlement Administrator; (4) preliminarily certifying the Settlement Class for settlement purposes only; (5) appointing David Orr, Henry Chamberlain, Angela Mickel, and Jennifer Grady as Representative Plaintiffs; (6) appointing Ben Barnow, Erich P. Schork, and David J. Worley as Lead Class Counsel; (7) appointing John Yanchunis, Jean Martin, Brian K. Herrington, and Ranse M. Partin as members of Plaintiffs' Executive Committee; (8) approving the form and content of the Email Notice, Postcard Notice, Detailed Notice, and Claim Form attached as Exhibits C–F of the Settlement, respectively; and (9) scheduling a Final Fairness Hearing.

## II.  <u>FACTUAL BACKGROUND</u>

On May 5, 2017, Plaintiff David Orr instituted a civil action on behalf of a class of similarly situated persons against Inter-Continental Hotels Corporation and InterContinental Hotels Group Resources, Inc. alleging that as a result of Defendants' security failures, he and the other proposed class members had their payment card information stolen by cybercriminals and incurred damages. On July 10, 2017, Inter-Continental Hotels Corporation and InterContinental Hotels Group Resources, Inc., filed a motion to dismiss Orr's complaint for failure to state a claim. On July 14, 2017, Plaintiffs David Orr and Henry Chamberlain filed their amended

complaint. On August 4, 2017, Plaintiffs David Orr, Henry Chamberlain, Angela Mickel, and Jennifer Grady filed their Second Amended Complaint.

On September 8, 2017, Inter-Continental Hotels Corporation and InterContinental Hotels Group Resources, Inc., moved to dismiss the Second Amended Complaint for failure to state a claim. The motion was fully briefed and was pending when the Settling Parties commenced settlement efforts ultimately culminating in the Settlement.

## III.  SUMMARY OF THE SETTLEMENT

### A.  The Settlement Class

Under the terms of the Settlement, the Settling Parties agreed to certification of the following Settlement Class for settlement purposes only:

> All persons who reside in the United States and used their credit or debit card at the front desk of an IHG-Branded Hotel location, or used their credit or debit card at a restaurant or bar on an IHG-managed hotel or property, as set forth at the locations and in the time periods identified in Exhibit I to [the Settlement].

SA ¶¶ 1.20, 2.7. The following Persons are specifically excluded from the Settlement Class: (a) individuals who are or were during the Data Security Incidents officers or directors of IHG; (b) any justice, judge, magistrate judge, or law clerk of this Court, the United States Court of Appeals for the Eleventh Circuit, and the Supreme Court of the United States. SA ¶ 1.20.

3

### B.   Settlement Benefits

In summary, the Settlement provides the following benefits:

### 1.   Reimbursement of Certain Expenses and Losses Due to Fraudulent or Unauthorized Charges

The Settlement provides that IHG shall pay up to $1,550,000 in the aggregate to reimburse Settlement Class Members for certain expenses and fraudulent or unreimbursed charges connected to the Data Security Incidents. SA ¶¶ 1.2, 2.1-2.3. In the event the value of approved claims in the aggregate exceeds $1,550,000, each individual approved claim shall be reduced in a pro rata amount so that the aggregate claims reimbursement is exactly $1,550,000. SA ¶ 2.3. Settlement Class Members may submit claims to receive reimbursement of both out-of-pocket expenses and losses incurred due to fraudulent and unauthorized charges. SA ¶ 2.2(c).

Expense Reimbursement Claims. Settlement Class Members providing the requisite documentation shall be entitled to claim and receive up to $250 as reimbursement for the following categories of expenses the Data Security Incidents contributed to being incurred: (i) charges related to unavailability of funds and unreimbursed card replacement, card reissuance, overdraft, over-the-limit, and late fees; (ii) long-distance telephone charges, cellular phone minutes (if charged by the minute), Internet usage charges (if charged by the minute or amount of data usage), and text messages (if charged by the message) as a result of the Data Security

4

Incidents; (iii) postage and shipping charges; (iv) interest on payday loans due to card cancelation or over-the-limit situations; (v) amounts paid for credit reports or for obtaining and removing credit freezes and financial account freezes; (vi) up to $75 in credit monitoring costs purchased and paid for at any time between August 1, 2016, through and including the Claims Deadline and any extensions thereof; (vii) reimbursement for lost time up to 4 hours at $20.00/hour for time spent dealing with replacement card issues, updating automatic payments associations, contesting fraudulent charges, and otherwise dealing with the Data Security Incidents. SA ¶ 2.1.

Fraudulent and Unauthorized Charge Claims. Settlement Class Members providing the requisite documentation shall be entitled to claim and receive up to $3,500 as reimbursement of actual unreimbursed losses due to fraudulent activity or unauthorized charges more likely than not caused by the Data Security Incidents. SA ¶ 2.2. If the amount claimed exceeds $200, the Settlement Administrator may in its discretion require the claimant to include information regarding the number of other data security incidents the claimant was subjected to for the same credit or debit card used in the Data Security Incidents and any recoveries or payments received from those breaches. SA ¶ 2.2.

To receive the benefits of the Settlement, Settlement Class Members need only log onto the Settlement website, complete the Claim Form attached as Exhibit F to the Settlement, and submit the Claim Form and requisite documentation via the Settlement website or mailing the materials to the Settlement Administrator. When completing a Claim Form, Settlement Class Members will have the option of choosing a payment method to receive reimbursement, which will include payment by check, PayPal, Zelle, or such other electronic payment platform deemed efficient and appropriate by the Settlement Administrator. SA ¶ 2.4. Claim forms failing to clearly make a single designation will receive a check by mail to the last known address on file with the Settlement Administrator.

### 2.     Costs of Notice and Settlement Administration

The costs of providing Notice of the Settlement to the Settlement Class and the costs of Settlement administration shall be paid by IHG. SA ¶ 2.6

### 3.     Attorneys' Fees, Costs, and Expenses, and Representative Plaintiff Service Awards

All awards of attorneys' fees, costs, and expenses, and Representative Plaintiff service awards shall be paid by IHG per the terms of the Settlement. SA ¶ 7.1. The Settling Parties did not discuss attorneys' fees, costs, and expenses, or Representative Plaintiff service awards until after all the substantive elements of the Settlement were agreed to, aside from the fact that they would be the responsibility

of IHG. SA ¶ 7.1. Additionally, the amounts of any award of attorneys' fees, costs, and expenses and Representative Plaintiff service awards are intended to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement. SA ¶ 7.6.

Proposed Lead Class Counsel intend to seek court approval for payment of attorneys' fees, costs, and expenses in the amount of $550,000 and Representative Plaintiff service awards in the amount of $1,500 for each Representative Plaintiff. SA ¶¶ 7.2, 7.3. Amounts awarded by the Court for attorneys' fees, costs, and expenses, and Representative Plaintiff service awards up to the amounts agreed in the Settlement will be paid by IHG independently of the relief provided to the Settlement Class under the Settlement and shall in no way diminish the recovery of the Settlement Class.

## IV.    ARGUMENT

"Because class settlements minimize the litigation expenses of the parties and reduce the strain that litigation imposes upon already scarce judicial resources," *Lunsford v. Woodforest Nat'l Bank*, No. 1:12-cv-103-CAP, 2014 WL 12740375, at *4 (N.D. Ga. May 19, 2014), "federal courts have long recognized a strong policy and presumption in favor of class settlements." *George v. Academy Mortg. Corp. (UT)*, 369 F. Supp 3d 1356, 1367 (N.D. Ga. 2019).

Under Fed. R. Civ. P. 23(e), approval of a proposed class settlement has two steps. In the first step, "the court directs notice in a reasonable manner to all class members who would be bound by the proposal if giving notice is justified by the parties' showing that the court will likely be able to" approve the proposal under 23(e)(2) and certify the class for purposes of judgment on the proposal. Fed. R. Civ. P. 23(e)(1)(B). In the second step, the court may approve the proposal after a hearing upon a finding that it is fair, reasonable, and adequate after considering whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2).

The Eleventh Circuit Court of Appeals has identified six factors to be considered in analyzing the fairness, reasonableness, and adequacy of a class settlement under Rule 23(e): (i) the existence of fraud or collusion behind the settlement; (ii) the complexity, expense, and likely duration of the litigation; (iii) the

stage of the proceedings and the amount of discovery completed; (iv) the probability of the plaintiffs' success on the merits; (v) the range of possible recovery; and (vi) the opinions of the class counsel, class representatives, and the substance and amount of opposition to the settlement. *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984).[2]

As consideration of the above factors demonstrates, the Settlement is likely to be approved as fair, reasonable, and adequate. The Settlement Class is also likely to be certified for settlement purposes at the Final Fairness Hearing.

## A. Preliminary Approval of the Settlement Is Appropriate

### 1. The Settlement Class Is Well Represented

Proposed Lead Class Counsel and proposed Executive Committee members have significant experience in data breach consumer class actions such as this and are well-informed of the legal claims at issue and the risks of this case. The resumes of proposed Lead Class Counsels' and proposed Executive Committee members are attached hereto as Group Exhibit B and Group Exhibit C, respectively.

---

[2] The advisory committee notes to the 2018 amendments of Rule 23 indicate that the 23(e)(2) factors are not meant "to displace any factor, but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." The amended rule largely overlaps with the *Bennett* factors, but the *Bennett* factors will be addressed in the course of discussing the 23(e)(2) factors where most appropriate.

Since the inception of this litigation, proposed Lead Class Counsel and proposed Executive Committee members have worked diligently to advance Representative Plaintiffs' and other Settlement Class Members' interests. After learning of the Data Security Incidents, they conducted a thorough preliminary investigation into the law and facts of the case, filed the lawsuit, and subsequently filed two amended class action complaints. They also opposed IHG's motion to dismiss the Second Amended Complaint and drafted and responded to notices of supplemental authority to keep the Court apprised of relevant decisions.

Prior to reaching the Settlement, Proposed Lead Class Counsel and counsel for IHG engaged in months of settlement negotiations. Throughout those negotiations, Proposed Lead Class Counsel pursued informal discovery from IHG that was appropriately targeted at information relevant to the Settlement. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) ("In the context of class action settlements, formal discovery is not a necessary ticket to the bargaining table where the parties have sufficient information to make an informed decision about settlement.") (citations and quotations omitted); *see also* Manual for Complex Litigation (Fourth) § 13.12 (2004) (recognizing that the benefits of settlement are diminished if it is postponed until discovery is completed and approving of targeting early discovery at information needed for settlement negotiations). Informal

discovery is a recognized method of minimizing the cost, delay, and burden associated with formal discovery. *See* Manual for Complex Litigation (Fourth) § 11.423 (2004). Indeed, to further such ends, courts are to "encourage counsel to exchange information, particularly relevant documents, without resort to formal discovery." *Id.*

To enable proposed Lead Class Counsel to confirm the information provided to them during the course of negotiations, the Settlement provides that IHG shall provide to proposed Lead Class Counsel all PFI reports relating to the Data Security Incidents, IHG's service provider Report on Compliance, and an Attestation on Compliance for eleven IHG-managed properties, and also enables proposed Lead Class Counsel to seek additional confirmatory discovery if reasonably necessary to evaluate the Settlement as agreed to by the Settling Parties or otherwise ordered by the Court. SA ¶ 10.4. Proposed Lead Class Counsels' review of the PFI report, attestations, and other documents provided by IHG further confirms their belief that that the Settlement represents an excellent result for Settlement Class Members.

Representative Plaintiffs have likewise worked diligently on behalf of the Settlement Class. They stepped forward to prosecute this action on behalf of all Settlement Class Members, were involved in the drafting of the complaint and

responding to discovery, and reviewed and approved the Settlement. This factor favors preliminary approval.

**2.      The Settlement Was Reached as a Result of Hard-Fought, Arm's Length Negotiations**

The Settlement is the product of hard-fought litigation and arm's length negotiations after a careful assessment of the strengths of Representative Plaintiffs' claims and the arguments of IHG. The Settlement Agreement was executed after months of negotiation by experienced counsel. The significant benefits conferred upon the Settlement Class by the Settlement Agreement attest to the fact that the negotiations were arm's-length and hard fought.

**3.      The Settlement Benefits Are Excellent, Taking into Consideration the Costs, Risks, and Delay of Trial and Potential Appeals**

Balancing the risks of continued litigation, the benefits of the Settlement, and the immediacy and certainty of the significant recovery provided for by the Settlement, supports that the Settlement should be preliminarily approved.

Representative Plaintiffs and Proposed Lead Class Counsel believe the claims asserted in the litigation have merit. They would not have fought so hard to advance the claims if it were otherwise. But they also recognize the substantial risks involved in continuing this litigation. IHG has maintained its positions that Representative Plaintiffs cannot state claims for relief, that a litigated class or classes should not be

certified, that it would not be found liable at trial, and that Representative Plaintiffs cannot prove damages resulting from the Data Security Incidents. While they disagree with IHG's views, proposed Lead Class Counsel are mindful of the inherent problems of proof and possible defenses to the claims asserted in the litigation. They also recognize the difficulties in establishing liability on a class-wide basis through summary judgment or even at trial and in achieving a result better than that offered by the Settlement here.

Prosecuting this litigation through trial and appeal would likely be lengthy, complex, and impose significant costs on all parties. *See, e.g.*, *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000) (recognizing that "[m]ost class actions are inherently complex and settlement avoids the costs, delays, and multitude of other problems associated with them"). Continued proceedings necessary to litigate this matter to final judgment would likely include substantial motion practice, extensive fact discovery, class certification proceedings, further dispositive motions and a trial and appeal. Given the complex nature of the security breaches at issue continued proceedings would likely include substantial expert discovery and significant motion practice related to such. Also, considering the size of the Settlement Class and the amount of money at stake, any decision on the merits would likely be appealed, causing further delay.

13

The Settlement, in contrast, provides certainty of recovery by making available up to $1,550,000 for the payment of valid claims for documented expenses, lost time (up to 4 hours at $20.00/hour), and losses due to fraudulent activity or unauthorized charges. To receive the benefits of the Settlement, Settlement Class Members need only log on to the Settlement website and complete and submit a Claim Form and requisite documentation (via the Settlement website or mailing the materials to the Settlement Administrator).

Thus, this factor favors preliminary approval of the Settlement. *See Grant v. Capital Mgmt. Servs., L.P.*, No. 10-CV-WQH BGS, 2014 WL 888665, at *3 (S.D. Cal. Mar. 5, 2014) ("The court shall consider the vagaries of the litigation and compare the significance of immediate recovery by way of compromise to the mere possibility of relief in the future, after protracted and expensive litigation. In this respect, it has been held proper to take the bird in hand instead of a prospective flock in the bush") (citations and quotations omitted).

### 4.      The Proposed Method of Distributing Relief Supports Preliminary Approval of the Settlement

Rule 23(e)(2)(C)(ii) requires consideration of "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims."

The Settlement and Claim Form are designed to facilitate the filing of valid claims by Settlement Class Members. To claim reimbursement, Settlement Class Members need only provide their contact information, describe time spent related to the Data Security Incidents or submit documentation supporting unreimbursed expenses or losses due to fraudulent or unauthorized activity, and submit their Claim Form (online or through mailing). All claims will be processed by Heffler Claims Group, an experienced and nationally-recognized class action administration firm. To facilitate timely and efficient payment, Settlement Class Members are also given the option to receive payment electronically or have a check mailed to them.

## 5. The Terms of the Proposed Award of Attorneys' Fees Support Preliminary Approval of the Settlement

Rule 23(e)(2)(C)(ii) requires consideration of "the terms of any proposed award of attorney's fees, including timing of payment."

The terms of the proposed attorneys' fee award are consistent with class action best practices. The Settling Parties did not discuss attorneys' fees until after all substantive elements of the Settlement were agreed upon. SA ¶ 7.1. The amount of any attorneys' fee award is intended to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement. SA ¶ 7.6. Additionally, the attorneys' fees award shall be paid within

fourteen (14) days of the Effective Date of the Settlement—there is no quick-pay provision in the Settlement. SA ¶ 7.5.

### 6.    The Settlement Parties' Agreements

The agreement of the Settling Parties is reflected in the Settlement, which was executed by the Settling Parties on April 14, 2020.

### 7.    The Settlement Treats Settlement Class Members Equitably Relative to One Another

The Settlement provides all Settlement Class Members an opportunity to submit a claim for reimbursement of reasonable out-of-pocket expenses and actual fraudulent or unauthorized charges.

Analysis of the foregoing factors demonstrates that the Settlement is likely to be approved as fair, adequate, and reasonable at the final approval stage. As a result, preliminary approval of the Settlement is appropriate and justified.

### B.    The Settlement Class Is Likely to Be Certified for Settlement Purposes

At the preliminary approval stage, the Court must address whether it "will likely be able to . . . certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B)(ii). As shown below, the requirements of Rule 23(a) and 23(b)(3) are satisfied and the Settlement Class is likely to be certified for settlement purposes.

### 1.      The Requirements of Fed. R. Civ. P. 23(a) Are Satisfied

**Numerosity:** Fed. R. Civ. P. 23(a)(1) requires a showing that "the class is so numerous that individual joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Here, the Data Security Incidents impacted an estimated two million Settlement Class Members. The numerosity requirement is readily satisfied.

**Commonality:** Rule 23(a)(2) requires the existence of a question of law or fact that is common to all Settlement Class Members and capable of class-wide resolution, the determination of which is central to the validity of all class members' claims. *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).

Several questions of law and fact common to all Settlement Class Members exist, including: (i) whether IHG violated common law duties and breached an implied contract with its customers; (ii) whether IHG failed to properly secure and protect Settlement Class Members' payment card information, and (iii) whether Settlement Class Members are entitled to damages, injunctive relief, or other equitable relief, and the measure of such damages and relief. These legal and factual questions are common to each member of the Settlement Class.

**Typicality:** Typicality is satisfied when "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Representative Plaintiffs and all other Settlement Class Members'

claims arise from IHG's alleged failure to implement and maintain reasonable security measures and the resulting Data Security Incidents, and their claims are based on the same legal theories. The typicality requirement is satisfied.

**Adequacy:** Representative parties must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Representative Plaintiffs have demonstrated that they are well-suited to represent the Settlement Class. They each came forward and agreed to seek to represent the Settlement Class and have been involved in this matter since that time, including reviewing and approving court filings as appropriate, corresponding with Plaintiffs' counsel as appropriate during the course of the Litigation, and reviewing and evaluating the Settlement Agreement. Proposed Lead Class Counsel and proposed Executive Committee members are well-qualified to represent the Settlement Class, as they each possess significant experience leading the prosecution of complex class action matters. *See* Group Exhibit B (resumes of proposed Lead Class Counsel), Group Exhibit C (resumes of proposed Executive Committee members).

### 2. The Requirements of Fed. R. Civ. P. 23(b)(3) Are Satisfied

Rule 23(b)(3) requires that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members of

the class, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).

**Predominance:** So long as "one or more of the central issues in the action are common to the class and can be said to predominate," certification is proper under Rule 23(b)(3) "even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *In re Delta/AirTran Baggage Fee Antitrust Litig.*, 317 F.R.D. 675, 682 (N.D. Ga. 2016). The above-identified questions common to all Settlement Class Members predominate over any potential individual questions.

**Superiority:** Rule 23(b)(3) requires a class action to be "superior to other available methods for the fair and efficient adjudication of the controversy."

A class action is superior to other available methods for fairly and efficiently adjudicating Settlement Class Members' claims against IHG. *See Phillips Co. v. Shutts*, 472 U.S. 797, 809 (1985) ("[c]lass actions . . . permit the plaintiffs to pool claims which would be uneconomical to litigate individually . . . [in such a case,] most of the plaintiffs would have no realistic day in court if a class action were not available"). Reason forecloses a person's willingness to shoulder the great expense of litigating the claims on their own against IHG given the comparatively small size

of each individual Settlement Class Member's claim. The superiority requirement is satisfied.

## C. The Notice Program Satisfies All Applicable Requirements

Notice serves to "afford members of the class due process which, in the context of the Rule 23(b)(3) class action, guarantees them the opportunity to be excluded from the class action and not be bound by any subsequent judgment." *Peters v. Nat'l R.R. Passenger Corp.*, 966 F.2d 1483, 1486 (D.C. Cir. 1992) (citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173–74 (1974)). The Court must "direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). And, notice must fairly describe the litigation and the proposed settlement and its legal significance. *See*, *e.g.*, *Twigg v. Sears, Roebuck & Co.*, 153 F.3d 1222, 1227 (11th Cir. 1998).

The Settling Parties agreed upon Heffler Claims Group as the Settlement Administrator to provide notice and settlement administration service and request the Court's approval and appointment of Heffler Claims Group as the Settlement Administrator. Heffler Claims Group has significant experience as a class action notice provider and settlement administrator. *See* SA Ex. A: Finegan Decl. ¶¶ 5–12.

The Notice Program includes: (1) direct Email Notice to every Settlement Class Member IHG has an email address for; (2) direct Postcard Notice to every

Settlement Class Member IHG has a mailing address for, but not an email address, or for whom IHG provides an email address identified as invalid by the Settlement Administrator or the Settlement Administrator receives a bounce-back email in response to the sending of Email Notice to; (3) targeted publication notice appearing in print media and on pre-vetted websites and social media platforms, such as Facebook, Instagram, and Twitter; (4) issuance of a press release; (5) a settlement website established to allow Settlement Class Members to obtain information regarding the Settlement, access important documents regarding the Settlement, and file claims online; and (6) a toll-free number to provide Settlement Class Members with information regarding the Settlement. *Id.* ¶ 13.

The Notice Program is highly targeted and estimated to reach 85% of Settlement Class Members, on average, three times. *Id.* ¶ 47. The Notice Plan readily satisfies the "best practicable" standard. *Id.*

### 1.    Contents of the Notice Program

The Notice documents were designed to provide information about the Settlement, along with clear, concise, easily understood information about Settlement Class Members' legal rights. The Notice documents include Email Notice, Postcard Notice, and a Detailed Notice available on the Settlement website (the Detailed Notice and Claim Form will also be provided by the Settlement

Administrator to claimants who request them). SA Exhibits C–E. The Notice documents collectively include a fair summary of the Settling Parties' respective litigation positions; the general terms of the Settlement; instructions for how to opt-out of or object to the Settlement; the Settlement website address; the process and instructions for making a claim; and, as to be set by the Court, the date, time, and place of the Final Fairness Hearing. SA Exhibits C–E.

The Notice documents contain information that a reasonable person would consider material in making an informed, intelligent decision of whether to opt out or remain a member of the Settlement Class and be bound by a final judgment, and they direct individuals to a convenient location to obtain more detailed information.

## 2.    Scope of Notice

Notice of the Settlement will be effectuated as prescribed by the Settlement Administrator. Pursuant to the Settlement, the Settlement Administrator will be provided with a comprehensive list of Settlement Class Member names, email addresses (to the extent available), and postal addresses (to the extent available) (the "Class List"). After receiving the Class List, the Settlement Administrator will de-duplicate the email addresses provided and further analyze the email addresses for formatting, spelling errors or incomplete addresses to identify invalid email addresses. Finegan Decl. ¶¶ 15-19. The Settlement Administrator will then cause

22

Email Notice to be sent to all unique email addresses identified as valid in a manner designed to maximize deliverability. *Id.* ¶ 20.

Postcard Notice will be mailed via First-Class Mail to all Settlement Class Members IHG has a mailing address for but not an email address, as well as all Settlement Class Members IHG has a mailing address for whose email address provided by IHG is identified as invalid by the Settlement Administrator or for whom the Settlement Administrator receives a bounce-back in response to the sending of Email Notice. Prior to causing the Postcard Notices to be mailed, the Settlement Administrator will de-duplicate the address records provided to it and send the addresses through the United States Postal Service's National Change of Address database to obtain the most current addresses for Class Members and to standardize the addresses for mailing. *Id.* ¶¶ 26-27.

Notice of the Settlement will also appear in print, on popular websites and social media platforms, and in a nationwide press release. *Id.* ¶¶ 36-44. Summary notice of the Settlement will be published in a half-page, black and white ad appearing in *People Magazine*. *Id.* ¶ 37. Approximately 40 million online display and social media impressions specifically targeted to potential Settlement Class Members will be delivered via a group of selected websites and popular social media platforms (Facebook, Instagram, and Twitter). *Id.* ¶¶ 38-42. Notice will be targeted

to individuals inputting certain keywords into their Google search (for example, InterContinental Hotels Settlement, InterContinental Hotels class action, InterContinental Hotels, and Holiday Inn Express). *Id.* ¶ 39. The Settlement Administrator will also cause a news release to be released over PR Newswire's USI Newsline, which delivers content to thousands of print and broadcast entities, websites, databases, and online services. *Id.* ¶ 43.

The Settlement Administrator will establish and maintain an informational Settlement website where Settlement Class Members will be able to access important information regarding the Settlement, submit or print a Claim Form, obtain contact information for the Settlement Administrator, and view or download the Settlement Agreement, Detailed Notice, and other important documents and orders related to the Settlement. *Id.* ¶ 45. The Settlement Administrator will also set up a toll-free IVR telephone line to enable Settlement Class Members to obtain information regarding the Settlement and request that copies of the Detailed Notice or Claim Form be mailed to them. *Id.* ¶ 46. The Settlement Administrator estimates the Notice Program will reach 85% of Settlement Class Members, on average, three times. *Id.* ¶ 47.

The Notice documents and the Notice Program are the best notice practicable under the circumstances, constitute due and sufficient notice to the Settlement Class, and comply with Fed. R. Civ. P. 23 and due process requirements.

## V.     CONCLUSION

The Settlement readily meets the standard for preliminary approval. Representative Plaintiffs respectfully request that this Honorable Court enter an Order: (1) preliminarily approving the Settlement; (2) directing that notice be disseminated to the Settlement Class Members in accordance with the Notice Program; (3) approving the form and content of the Email Notice, Postcard Notice, Detailed Notice, and Claim Form; (4) appointing David Orr, Henry Chamberlain, Angela Mickel, and Jennifer Grady as Representative Plaintiffs; (5) appointing Ben Barnow, Erich P. Schork, and David J. Worley as Lead Class Counsel; (6) appointing John Yanchunis, Jean Martin, Brian K. Herrington, and Ranse M. Partin as Plaintiffs' Executive Committee; and (7) scheduling a Final Fairness hearing to consider the entry of final order and judgment approving the Settlement and the request for attorneys' fees, costs, expenses, and Representative Plaintiffs' service awards.

Dated:        April 15, 2020              Respectfully submitted,

David Orr, Henry Chamberlain, Angela
Mickel, and Jennifer Grady, individually
and on behalf of all others similarly situated,

 /s/ David J. Worley
David J. Worley
Georgia Bar No. 776665
James M. Evangelista
Georgia Bar No.  707807
**EVANGELISTA WORLEY, LLC**
500 Sugar Mill Road, Suite 245A
Atlanta, GA 30350
Tel: (404) 205-8400
david@ewlawllc.com
jim@ewlawllc.com

Ben Barnow (*Pro hac vice*)
Illinois Bar No. 0118265
Erich P. Schork (*Pro hac vice*)
Illinois Bar No. 6291153
Anthony L. Parkhill (*Pro hac vice*)
Illinois Bar No. 631768
**BARNOW AND ASSOCIATES, P.C.**
205 W. Randolph St., Suite 1630
Chicago, IL 60606
Tel: (312) 621-2000
b.barnow@barnowlaw.com
e.schork@barnowlaw.com
aparkhill@barnowlaw.com

Brian K. Herrington (*Pro hac vice*)
Mississippi Bar No. 10204
**SCHLANGER LAW GROUP LLP**
200 North Congress Street, Suite 117
Jackson, MS 39201

26

Ranse M. Partin
**CONLEY GRIGGS PARTIN LLP**
4200 Northside Parkway NW
Building One, Suite 300
Atlanta, GA 30327
Tel: (404) 809-2591
Fax: (404) 467-1166
ranse@conleygriggs.com

John Yanchunis (*Pro hac vice*)
Florida Bar Number 324681
Marisa Glassman (*Pro hac vice*)
Florida Bar Number 111991
Jean Sutton Martin (*Pro hac vice*)
North Carolina Bar Number 25703
**MORGAN & MORGAN COMPLEX**
**LITIGATION GROUP**
201 North Franklin Street, 7th Floor
Tampa, Florida 33602
Telephone:  (813) 223-5505
Facsimile:   (813) 223-5402
jyanchunis@forthepeople.com
mglassman@forthepeople.com
jeanmartin@forthepeople.com

Christopher D. Jennings (*Pro hac vice*)
Arkansas Bar Number 2006306
**JOHNSON VINES PLLC**
2226 Cottondale Lane, Suite 210
Little Rock, Arkansas 72202
Telephone: (501) 372-1300
Facsimilie: (888) 505-0909
cjennings@johnsonvines.com

Steven W. Teppler (*Pro hac vice*)
Florida Bar Number 14787
**ABBOTT LAW GROUP, P.A.**
2929 Plummer Cove Road
Jacksonville, FL 32223
Telephone: (904) 292-1111
Facsimile: (904) 292-1220
steppler@abbottlawpa.com

## RULE 7.1(D) CERTIFICATE

The undersigned counsel certifies that this document has been prepared with

Times New Roman 14-point font in accordance with Local Rule 5.1(C).

Dated: April 15, 2020

                                       */s/ David J. Worley*
David J. Worley
Georgia Bar No. 776665
**EVANGELISTA WORLEY, LLC**
500 Sugar Mill Road, Suite 245A
Atlanta, GA 30350
Tel: (404) 205-8400
david@ewlawllc.com

## **CERTIFICATE OF SERVICE**

I hereby certify that I caused a true and correct copy of the foregoing to be served on all counsel of record via the Court's ECF filing system.

Dated: April 15, 2020

*/s/ David J. Worley*
David J. Worley